612 So.2d 626 (1993)
Marvin TAYLOR, Appellant,
v.
STATE of Florida, Appellee.
No. 91-3962.
District Court of Appeal of Florida, First District.
January 11, 1993.
Rehearing Denied February 12, 1993.
*627 James R. Thies, Sr., Orange Park, for appellant.
Robert A. Butterworth, Atty. Gen., Carolyn J. Mosley, Asst. Atty. Gen., Tallahassee, for appellee.
SMITH, Judge.
Appellant appeals his conviction for sale or delivery of cocaine. We write only to address appellant's contention that the trial court erred in denying his motion for disclosure by the state of information he needed to establish a due process violation involving payment of contingent fees to a confidential informant. We affirm.
This case involves two controlled drug buys by a confidential informant, Gerald Jefferson, from appellant. In the first, which occurred June 7, 1991, Jefferson was provided with an undercover vehicle in which a video camera was installed. He and the vehicle were searched for money, drugs and anything else, before and after the controlled buy. Jefferson wore a body bug and was given $60 in cash. Detective Jett, of the Clay County Sheriff's Office, monitored the transaction through a listening device. Jett heard Jefferson ask for "60," and a voice, later identified as Taylor's respond, "60?" to which Jefferson said, "Yeah, 60," which is street slang for "$60 worth of crack cocaine." Part of the incident was captured on videotape. After the drug transaction was completed, Jefferson met Jett at a predetermined location and gave him three rocks of cocaine. The two reviewed the videotape and Jefferson identified Taylor as a participant in the transaction.[1] In the second controlled buy on June 21, 1991, Jefferson was given $40, and when he returned, Jett retrieved two rocks of crack cocaine from him. Jefferson identified Taylor as participating in the drug deal. The videotape of the first transaction shows appellant, the videotape of the second does not. Later, appellant was arrested and charged with two counts of unlawful sale or delivery of cocaine after undercover operations were over.
Appellant filed a motion for production of favorable evidence seeking all records of the Clay County Sheriff's Office regarding drug transactions made by Gerald Jefferson in 1991 and his criminal history. The state resisted, taking the position that it did not have to supply this information. Taylor filed a motion to compel discovery and also a motion to issue a subpoena duces tecum, seeking the same material.
The motion to compel discovery recites that depositions of Jefferson were taken in which Jefferson testified that he was paid as much as $20 per drug transaction by the Clay County Sheriff's Office for which he would have to sign a yellow sheet of paper saying he received the money. According to the motion, Jefferson testified that the most he received on any one occasion was $250, and that he didn't know or didn't *628 believe that taxes had been withheld from the monies he received. Jefferson also was said to have testified that he had no idea how many cases he had made for the sheriff's office or the total amount he had been paid for all his drug transactions. Also, it was alleged that at his deposition, Jefferson admitted being a drug user.
In the motion to compel discovery, appellant's stated reason for needing all the 1991 records pertaining to Jefferson's drug buys was that Jefferson was "a convicted felon, a confirmed drug user, and was paid a large sum of money to make drug deals for the Clay County Sheriff's Office." The motion concluded: "All information that deals with this witness's credibility and which contradicts his testimony will have a direct impact upon the jury."
At the hearing on the motions, counsel for appellant noted a conflict between Jefferson's deposition testimony and the deposition testimony of Detective Jett, regarding the two transactions and how many rocks of crack cocaine were purchased in each one. The court inquired whether that was an issue of credibility for the jury to resolve, to which counsel responded: "Sure it is." Nevertheless, counsel argued that the information requested would clear up the discrepancies between Jefferson's and Jett's deposition testimony, and that these records would provide the best evidence of what amount of cocaine was purchased for what amount of money on what date. The state responded that appellant was essentially going on a fishing expedition, and had not established the materiality of the requested information or that it would be favorable to appellant or negate his guilt. The trial court ordered disclosure of Jefferson's criminal record, but refused to order disclosure of all records of Jefferson's drug transactions conducted in 1991.
At trial, with respect to Jefferson's employment as a confidential informant, Jett and Jefferson testified that Jefferson was working for money. Jefferson said he was paid $20 for each buy, and Jett concurred, although Jett added that Jefferson was paid $20 or an average of $20 for each purchase of crack cocaine. Jefferson usually made more than one purchase a day and sometimes as many as ten a day. The most he ever made in one day was approximately $200 to $250, but that did not happen often. Jefferson was also promised payment for court appearances and depositions. Jefferson testified that he expected to be paid for testifying at appellant's trial, but he didn't know the amount, although he was sure that he would be "treated right." Jett estimated that Jefferson had participated in approximately forty to sixty cases. On cross-examination, Jett elaborated further that when Jefferson began working for him and financial arrangements were discussed, Jefferson was told he would be paid depending on how big the case was and how involved Jefferson wanted to get.
Jefferson was cross-examined thoroughly regarding the discrepancies between his deposition and trial testimony. Jefferson admitted that his trial testimony was different than his deposition testimony. However, he explained that he was confused concerning the various buys mentioned in his deposition, and that before his trial testimony, he had reviewed the videos and the report and was able to be more certain regarding the two transactions. The jury convicted appellant of selling cocaine on June 7, 1991, but found him not guilty of sale or delivery on June 21.
Appellant filed a motion for new trial contending, among other things, that the verdict was contrary to the law and the weight of the evidence because the state's primary witness, Jefferson, gave perjured testimony and was paid for his testimony contrary to State v. Hunter, 586 So.2d 319 (Fla. 1991),[2] and State v. Glosson, 462 So.2d 1082 (Fla. 1985). Appellant argued that the court erred in refusing to order disclosure of the amount of money paid to Jefferson. The trial court denied the motion for new trial. On appeal, appellant contends these *629 rulings by the trial court were error. Appellant's arguments fail for several reasons.
First, appellant appears to be under the erroneous impression that the action of the state in paying a confidential informant for making drug cases and paying him to testify in a subsequent court proceeding is contrary to the holding of State v. Glosson. In that case the court did not outlaw all contingent fee arrangements, but merely held that the payment of contingent fees to an informant based upon the amount of civil forfeitures resulting from criminal investigations violated due process protections. The financial arrangement between the informant and the sheriff's office in that case was that the informant would receive 10 percent of all civil forfeitures as a result of criminal investigations, and the contingency would be paid from all civil forfeitures going to the sheriff's department. As part of the agreement, the informant would testify and cooperate in the prosecution of the defendants to collect his contingent fee.
When the issue was first presented to this court, State v. Glosson, 441 So.2d 1178 (Fla. 1st DCA 1983), this court relied upon Williamson v. United States, 311 F.2d 441 (5th Cir.1962), cert. denied, 381 U.S. 950, 85 S.Ct. 1803, 14 L.Ed.2d 724 (1965) which holds that, in the absence of justification or explanation, a conviction based on evidence of an informer hired under a contingent fee arrangement may not stand. This court recognized that Williamson had been restricted by subsequent decisions to those cases where contingent fees are paid for evidence against particular persons, but nevertheless was persuaded that under the circumstances of the case the egregiousness of the contingent fee arrangement required dismissal of the charges against Glosson and the other defendants on due process grounds. The supreme court agreed commenting: "We can imagine few situations with more potential for abuse of a defendant's due process right. The informant here had an enormous financial incentive not only to make criminal cases, but also to color his testimony or even commit perjury in pursuit of a contingent fee." 462 So.2d at 1085.
There are two other distinguishing features between this case and Glosson which should be noted at this point. First, in Glosson, the defendant raised his due process argument in a motion to dismiss, before trial. Here, in contrast, it was not until appellant's motion for new trial that appellant even mentioned State v. Glosson, or alleged an unlawful contingent fee arrangement. Secondly, in Glosson, each defendant, unlike appellant, asserted an entrapment defense and maintained that the testimony of the informant, who had an enormous financial incentive to testify falsely, was necessary in order for there to be a successful prosecution.
It is generally held that an informant receives a contingent fee if a financial benefit will flow to him or her depending upon a particular contingency, such as an arrest or a conviction, or financial compensation is in some way contingent upon a future event such as testimony at trial or a conviction, rather than a set fee. See generally Annot. 57 ALR4 643 (1987). The facts do not bring this case within these conditions. Unlike Glosson, in which the informant was given a contingent fee conditioned on cooperation and testimony, in this case, Jefferson's fee was neither contingent nor was it conditioned on cooperation and testimony. The same incentive to color testimony or commit perjury is not present in this case, and accordingly, there was no due process violation. See e.g. Moore v. State, 498 So.2d 612 (Fla. 5th DCA 1986) (no due process violation where informant was paid weekly salary and additional sum for each drug purchase, but neither salary nor additional payment was contingent upon successful prosecution, informant was not required to return money for drug sales that did not result in convictions, informant was searched before and after sale to defendant, and conversation with defendant was recorded through use of concealed microphone); Lee v. State, 490 So.2d 80 (Fla. 1st DCA 1986), quashed on other grounds, 501 So.2d 591 (Fla. 1987) (informant paid after each drug purchase, *630 fee not contingent upon a successful prosecution); State v. Prieto, 479 So.2d 320 (Fla. 3d DCA 1985) (payment to informant contingent on the quantity of drugs seized and not on cooperation and trial testimony in the resulting criminal prosecution); Dodd v. State, 475 So.2d 310 (Fla. 2d DCA 1985), rev. denied, 488 So.2d 829 (Fla. 1986) (informant paid an amount based on type of transaction and risk involved, not a percentage of any funds realized from the drug transaction); Yolman v. State, 473 So.2d 716 (Fla. 2d DCA), rev. denied, 475 So.2d 696 (Fla. 1985) (informant's fee determined by size of drug deal, but not contingent upon his cooperation in defendant's prosecution).
In concluding that the record before us reveals no due process violation, we note that the matter of the fee arrangement with Jefferson was thoroughly explored below and was a matter of credibility for the jury to determine. While the meaning of some of the testimony regarding the arrangement was not clear, under no view of the evidence could it be said that the arrangement between the parties was that Jefferson would be paid only when the state obtained a conviction. All indications are that Jefferson was paid for this controlled buy before appellant was brought to trial. As Jefferson explained at trial, each week when he was paid he signed a little yellow receipt for the payment.
Although the evidence does not demonstrate an impermissible contingent fee arrangement, we must address appellant's further contention that he should have been granted full access to the sheriff's payroll records regarding drug transactions made by Gerald Jefferson. Implicit in appellant's argument is the contention that had he had this information, he might have been able to establish a contingent fee arrangement contrary to the testimony of Jett and Jefferson. We are not persuaded that under the circumstances of this case, the trial court erred in denying the motion to compel discovery.
The information sought by appellant was not required to be produced by rule 3.220, Florida Rules of Criminal Procedure. Rule 3.220(f) adds that upon a showing of materiality, the court may require other discovery to the parties as justice may require. Reviewing appellant's motion to compel discovery, we note that neither in the motion nor in the argument to the trial court did appellant allege the need for information regarding the fee arrangement between Jefferson and the sheriff's office in order to establish his defense of a due process violation requiring dismissal of the charges against him. See Hill v. State, 549 So.2d 179, 182 (Fla. 1989) (failure to present to trial court constitutional argument grounded on due process procedurally bars appellant from presenting argument on appeal).
Appellant's stated reason for needing the information sought in the motion to compel discovery was to use it to impeach Jefferson and/or Jett regarding the details of each drug transaction. Given the reason advanced for needing the information, it cannot be said that the trial court erred in denying the motion to compel discovery. Compare Brown v. State, 493 So.2d 80 (Fla. 1st DCA 1986) (trial court properly denied access to inmate files where discovery request was indefinite and in the nature of a fishing expedition and defendant argued only that the files might contain evidence that could be used for impeachment of inmates by reputation for truth and veracity). Understandably, it appears that the trial court here was of the view that appellant could accomplish his stated purpose simply through cross-examination of the witnesses. See Brookings v. State, 495 So.2d 135 (Fla. 1986) (defendant's allegations of certain inconsistencies in various statements of state witnesses were insufficient to require disclosure of witnesses' grand jury testimony; defense counsel through cross-examination able to bring out purported inconsistencies). Appellant did not advise the trial court that he wanted the information to show that the confidential informant had a financial motive to testify favorably. Compare Briskin v. State, 341 So.2d 780 (Fla. 3d DCA 1976), cert. denied, 348 So.2d 953 (Fla. 1977) (defendant charged with possession of stolen motor vehicle and five counts of temporary and unauthorized use of motor vehicle, *631 should have been entitled to discovery of police file on third person where defendant claimed that he was "conned" by third person, who was arrested on charges which were similar to those filed against the defendant).
Appellant's remaining arguments are without merit. Accordingly, the judgment against appellant is
AFFIRMED.
WIGGINTON and WOLF, JJ., concur.
NOTES
[1] Codefendant, Robert Tisdale, was also a participant in the controlled buys. However, factual matters regarding his participation are omitted from the recitation of facts because they add nothing to a resolution of the issues discussed in this opinion.
[2] State v. Hunter adds little to the analysis of this case since it was decided under an entrapment theory.