634 So.2d 1075 (1994)
Marvin TAYLOR, Petitioner,
v.
STATE of Florida, Respondent.
No. 81446.
Supreme Court of Florida.
April 7, 1994.
James R. Thies, Sr., Orange Park, for petitioner.
Robert A. Butterworth, Atty. Gen., and James W. Rogers, Bureau Chief, Crim. Appeals, and Carolyn J. Mosley, Asst. Atty. Gen., Tallahassee, for respondent.
SHAW, Justice.
We have for review Taylor v. State, 612 So.2d 626 (Fla. 1st DCA 1993), based on conflict with State v. Glosson, 462 So.2d 1082 (Fla. 1985). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const. We approve Taylor.
Confidential informant Gerald Jefferson made two controlled purchases of cocaine from Marvin Taylor. In the first, which took place June 7, 1991, Jefferson was provided with a vehicle equipped with a video camera, was searched by police before and after the purchase, was equipped with a body bug, and was given sixty dollars. Detective Jett of the Clay County Sheriff's Office monitored the transaction through a listening device and a portion of the incident was captured on videotape. Taylor sold three rocks of crack cocaine to Jefferson for sixty dollars. In the second purchase, on June 21, 1991, Taylor sold two cocaine rocks to Jefferson for forty dollars. The second incident was not captured on videotape. Taylor was charged with two counts of sale or delivery of cocaine.
*1076 Taylor filed a discovery motion seeking all records of the Sheriff's Office concerning Jefferson's criminal record and drug transactions made by him in 1991. The State resisted and Taylor filed a motion to compel discovery and a motion to issue a subpoena duces tecum for the records. The trial court ordered the State to disclose Jefferson's criminal record but refused to order disclosure of records concerning Jefferson's drug transactions. Jefferson was the key prosecution witness and testified that under his fee agreement with the Sheriff's Office he was paid twenty dollars per buy, that he usually made more than one a day, that the most he ever made was $200 to $250 per day, that he was promised pay for depositions and court appearances, that he expected to get paid for the present trial but he does not know the amount except that he will be "treated right." Detective Jett testified that Jefferson had participated in forty to sixty cases and that he, Jett, had told Jefferson that he would be paid depending on how big the case was and how involved Jefferson wanted to get.
Taylor was convicted for the sale of cocaine on June 7 but not June 21. The district court affirmed, and we granted review based on conflict with State v. Glosson, 462 So.2d 1082 (Fla. 1985), wherein we held that a defendant's due process rights are violated "in cases where an informant stands to gain a contingent fee conditioned on cooperation and testimony in the criminal prosecution." Id. at 1085.
Taylor contends that the arrangement between the State and Jefferson amounted to a contingency fee agreement giving the informant an improper incentive to make cases and color his testimony. This case, he argues, fits squarely within the four corners of Glosson.
Boyce Glosson was charged with trafficking in cannabis as the result of a reversesting operation run by the Levy County Sheriff's Office through paid informant Norwood Wilson. The sheriff seized several vehicles and $80,000 in cash in the operation and sought forfeiture of those assets. Under the standing fee arrangement between Wilson and the Sheriff's Office, Wilson would receive ten percent of all civil forfeitures arising out of successful criminal investigations in which he participated. We approved dismissal of the charges based on our state Due Process Clause:
We reject the narrow application of the due process defense found in the federal cases. Based upon the due process provision of article I, section 9 of the Florida Constitution, we agree with [several state court decisions] that governmental misconduct which violates the constitutional due process right of a defendant, regardless of that defendant's predisposition, requires the dismissal of criminal charges.
Our examination of this case convinces us that the contingent fee agreement with informant and vital state witness, Wilson, violated the respondents' due process right under our state constitution. According to the stipulated facts, the state attorney's office knew about Wilson's contingent fee agreement and supervised his criminal investigations. Wilson had to testify and cooperate in criminal prosecutions in order to receive his contingent fee from the connected civil forfeitures, and criminal convictions could not be obtained in this case without his testimony. We can imagine few situations with more potential for abuse of a defendant's due process right. The informant here had an enormous financial incentive not only to make criminal cases, but also to color his testimony or even commit perjury in pursuit of the contingent fee. The due process rights of all citizens require us to forbid criminal prosecutions based upon the testimony of vital state witnesses who have what amounts to a financial stake in criminal convictions.
Accordingly, we hold that a trial court may properly dismiss criminal charges for constitutional due process violations in cases where an informant stands to gain a contingent fee conditioned upon cooperation and testimony in the criminal prosecution when that testimony is critical to a successful prosecution.
Glosson, 462 So.2d at 1085.
The present case falls outside the Glosson rubric for several reasons. First, the police operation in Glosson was a reverse-sting, wherein the informant functioned as the seller. *1077 This gave him wide discretion in selecting targets, thereby increasing the risk that suspects would be chosen based on subjective criteria such as personal wealth. The present operation, on the other hand, was a straightforward sting, wherein the informant functioned as the buyer  thereby severely limiting his discretion in choosing stings. Second, the informant's fee in Glosson was contingent on the extent of the defendant's assets subject to forfeiture. The greater the worth of the assets, the greater the informant's incentive to make cases and color testimony. Here, in contrast, the informant was paid a settled fee for each buy, deposition, and court appearance. To the extent his fee was variable, it was dependent on the amount of work he was willing to put into a case, not the wealth of the defendant. And third, the fee in Glosson was extravagant. The informant stood to gain a ten percent interest in several vehicles and $80,000 in cash. Here, the informant was paid twenty dollars per buy and a modest sum for depositions and court appearances.
Taylor's due process rights were not violated by the actions of the informant. To the extent the informant's relationship with the Sheriff's Office raised questions concerning his objectivity as a witness, this was a matter of credibility for the trier-of-fact to assess after weighing the testimony and evidence.[1]
Based on the foregoing, we approve Taylor.
It is so ordered.
OVERTON, McDONALD, GRIMES and HARDING, JJ., concur.
KOGAN, J., concurs in result only with an opinion.
BARKETT, C.J., concurs in result only.
KOGAN, Justice, concurring in result only.
I agree that Glosson does not apply here because of the facts of this case. It is significant, though not necessarily dispositive, that a case such as this one involved a direct sting, whereas Glosson involved a reverse sting. However, it is conceivable that even a direct sting could involve overreaching of such magnitude as to bring a case within the proscriptions of Glosson. Here, however, I can find no such overreaching. I therefore concur with the result reached by the majority. In so saying, I do not believe that payment of a settled fee to the informant, whether extravagant or not, necessarily brings a case without the Glosson analysis. The sole question is the degree of overreaching, which does not necessarily hinge on the fact, method, or amount of payment to the informant.
NOTES
[1] We find no merit to Taylor's claim that the trial court erred in declining to order disclosure of Sheriff Office records of all Jefferson's activities as a confidential informant during 1991.