**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Juan A. SANDOVAL, Defendant–
Appellant.**

**No. 93–8044.**

United States Court of Appeals,
Fifth Circuit.

April 20, 1994.

Paul F. Lettunich, Jr. and Gary B. Weiser, Lipson, Dallas & Weiser, P.C., El Paso, TX, for defendant-appellant.

Joseph Gay, Jr. and Richard L. Durbin, Jr., Asst. U.S. Attys., San Antonio, TX, for plaintiff-appellee.

Before POLITZ, Chief Judge, KING and DAVIS, Circuit Judges.

POLITZ, Chief Judge:

Convicted under 18 U.S.C. § 201(b)(1) of two counts of bribing a public official, Juan Sandoval appeals, claiming that he was entrapped and that the counts on which he was convicted were multiplicitous. For the reasons assigned we reverse.

### Background

In December 1991 the Internal Revenue Service sent its agent Isela Hernandez to the Sandoval home in El Paso to meet with the defendant and his wife Maria. Maria Sandoval had been convicted of embezzling money from her employer and the IRS sought to revise the Sandovals' 1988 joint tax liability in light of the embezzlement income. During this meeting Agent Hernandez expressed interest in Maria Sandoval's comment that her former employers and co-workers were not reporting all of their income. Maria Sandoval testified that Hernandez told them that the IRS had a reward program for reports of such information.[1]

In March 1992 Juan Sandoval called Agent Hernandez to inquire about the delays in determining their tax liability. During that conversation Sandoval said: "How can I say this? I would like to make a deal with you." Agent Hernandez testified that although she did not take this comment to refer to any

---

1. Under the IRS reward program, 26 C.F.R. § 301.7623–1, the Service will "approve such reward" as is "suitable for information that leads to the detection and punishment of any person guilty of violating any internal revenue law, or conniving at the same." 26 C.F.R. § 301.7623–1(a). Hernandez testified that she did not recall explaining the program to the Sandovals.

criminal activity, she had "never heard ... that word 'deal' before" and Sandoval's request to meet with her in person gave her "a gut feeling that something was not right." She informed the IRS Internal Security Division, and at their suggestion wore a recording device when she met with Sandoval. Agents in the security division told Hernandez to refuse any offer of information and insist on something tangible from Sandoval.

Today's disposition is based primarily on the recording and transcript of the conversation between Sandoval and Agent Hernandez which took place at a prearranged luncheon several days later. Early on Sandoval explained his telephone reference to a deal by stating rather haltingly "I'm used to deals in this and that ... but, uh, this guy that, that we know is, is living well beyond his means ... considerably ... and he's a public official.... And this guy's taking bribes and stuff like that, but what I wanted to know is what, what would be in it for me to get you all this stuff?" During the remainder of this meeting, Agent Hernandez sought to steer Sandoval away from the reward for information concept. "What's in it for me?" she asked on numerous occasions. To Sandoval's offer of information which might lead to recognition or promotion, Hernandez variously replied: "[T]his isn't the way the system works"; a reward for information would "jeopardize my career"; and, finally, "information, that's not enough." Agent Hernandez, obviously conscious of the wire she was wearing, insisted on several occasions that the deal she needed was one "strictly between you and I."

Sandoval stated several times that he did not know how the reward for information program worked and asked Hernandez to explain. Despite the agent's repeated efforts to direct Sandoval toward a tangible bribe he continued to offer only information. It was only after a discussion covering 23 pages of transcript, ten requests by Agent Hernandez for some personal benefit as opposed to information, and at least three exclamations that what she sought was "strictly between you and I," that Sandoval finally understood

that Hernandez was speaking of a bribe and not merely information. At this point Hernandez again stated that she needed something "besides the information, that's not enough." Sandoval asked with discernible puzzlement: "The information is not enough?" Hernandez responded "Not for me ... to risk my career." After a long pause, Sandoval slowly said: "I don't know. Let me think about it a little bit."

Finally Sandoval inquired hesitantly about what Hernandez needed. Hernandez responded "Hey, I scratch your back and you scratch my back, you know. I mean, I can't do something for nothing." In the face of Sandoval's reluctance, Hernandez reminded him of the large tax liability he faced. At the conclusion of their lunch Sandoval and Hernandez agreed to meet again to discuss the matter, doing so several days later. Under the agreement then struck, Sandoval was to pay Hernandez $3000 cash in two installments and Hernandez would revise her report to reduce his tax obligation roughly in half. Later in March Sandoval delivered the first payment, remarking that he had never done anything like this before. In April Sandoval delivered the remaining $1500.

Sandoval was indicted on four counts of bribing a public official in violation of 18 U.S.C. § 201(b)(1). The first count, dismissed for insufficient evidence at the close of the government's case, charged Sandoval with bribing Agent Hernandez by offering her information on lawbreakers as a "thing of value" to influence her review of his tax returns.[2] The second count charged Sandoval with offering Agent Hernandez $3000 for a favorable tax assessment. The third and fourth counts each charge a count of bribery for one of the $1500 payments. The jury did not reach a verdict on count two but found Sandoval guilty on counts three and four. Sandoval was sentenced to two concurrent 12–month terms of imprisonment and a period of supervised release. He timely appealed.

### Analysis

Sandoval challenges his conviction, contending that as a matter of law the gov-

---

**2.** As explained *infra,* this count should have been dismissed as a matter of law. A request for

prosecutorial lenience in exchange for information on lawbreakers does not constitute a bribe.

ernment did not prove beyond a reasonable doubt that he was predisposed to bribery, prior to and independent of the government's inducements, as required by the Supreme Court's recent teachings in *Jacobson v. United States.* [3] We review this assignment of error accepting every fact in the light most favorable to Sandoval's conviction and may reverse only if no rational jury could have found beyond a reasonable doubt that he was predisposed to bribery.[4]

We begin our review with the Supreme Court's most recent holding on entrapment. In *Jacobson,* government agents engaged in a campaign of phony mailings to induce a Nebraska farmer to violate the ban on child pornography contained in the 1984 Child Protection Act. After seven or eight mailings spanning 26 months, Jacobson succumbed and ordered an illegal magazine. The Supreme Court held as a matter of law that Jacobson had been entrapped. "In their zeal to enforce the law ... Government agents may not originate a criminal design, implant in an innocent person's mind the disposition to commit a criminal act, and then induce commission of the crime so that the Government may prosecute." [5] To defeat an entrapment defense in such cases, "the prosecution must prove beyond a reasonable doubt that the defendant was disposed to commit the criminal act prior to first being approached by Government agents." [6] Given the government's persistent encouragements, the Supreme Court found that Jacobson's "ready response to these solicitations cannot be enough to establish beyond reasonable doubt that he was predisposed, prior to the Government acts intended to create predisposition, to commit the crime." [7]

■ The facts of the instant case involve government conduct every bit as troubling as that described in *Jacobson.* Given that Sandoval's offer of information was not a bribe [8] but merely was the pursuit of a legitimate reward for information, it is clear that the IRS initiated the bribery scheme. Interpreting Sandoval's early reference to a "deal" as his initiation of a bribe attempt is untenable in light of the legal offer of information he thereafter repeatedly tendered. It was only after Hernandez' persistent requests for a personal benefit and the rejection of a reward for information that Sandoval considered offering more. Even then he expressed a desire to think about what Hernandez was proposing. Confronted with Sandoval's expressed uncertainty, Agent Hernandez emphasized his tax and penalty exposure to "pla[y] on [his] weaknesses" and pressure him into accepting the scheme.[9] We are persuaded that the government originated the bribery scheme, implanted it in Sandoval's mind, and induced him to cooperate.

■ Guided by *Jacobson* we inquire whether there is sufficient evidence, prior to

3.  —— U.S. ——, 112 S.Ct. 1535, 118 L.Ed.2d 174 (1992). Sandoval also contends that counts two, three, and four were multiplicitous and that the district court erred in not instructing the jury to ignore count one of the indictment as evidence of predisposition. Given today's holding, we do not reach these issues.

4.  *United States v. Arditti,* 955 F.2d 331 (5th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 597, 121 L.Ed.2d 534 (1992).

5.  —— U.S. at ——, 112 S.Ct. at 1536, 118 L.Ed.2d at 184.

6.  *Id.*

7.  *Id.* at ——, 112 S.Ct. at 1543, 118 L.Ed.2d at 187.

8.  In the trial court the government submitted as evidence of predisposition Sandoval's offer of information which it characterized as a bribe attempt. Although it is a crime to "directly or indirectly, corruptly give[], offer[] or promise[] anything of value to any public official ... with intent ... to influence any official act," 18 U.S.C. § 201(b), and while this statute is broadly construed in order to effectuate its legislative purpose of deterring corruption, no federal authority has ever found that trading information for lenience runs afoul of 18 U.S.C. § 201. The government's broad interpretation would criminalize the IRS reward program and such established practices as the prosecution recommending downward departures in sentencing for helpful informants. Such actions are neither corrupt nor do they involve "anything of value" as used in 18 U.S.C. § 201.

9.  *Jacobson.* In the context of their conversation, which fortunately for Sandoval was recorded, the issue of amounts owing could only have been raised to encourage Sandoval to join the bribery scheme. Otherwise the agent's remarks were an utter *non sequitur.*

and independent of the government's inducement, upon which a rational jury could have found predisposition.[10] Although an eager acceptance of an opportunity to commit some illegal act may prove predisposition,[11] *Jacobson* clarified the boundaries of such substituted proof, rejecting it where significant and persistent government encouragement was required to induce the crime.[12] As directed by the security division, Hernandez doggedly steered Sandoval away from a legitimate reward for information and toward a bribe.[13] Despite her efforts, Sandoval was reluctant about the transaction at its initial stages. Considering the repeated efforts Hernandez had to make, Sandoval's consistent and successive efforts to act legally, and his hesitation upon finally realizing the import of Hernandez' proposal, Sandoval's entry into the government's scheme cannot fairly be construed as "eager" any more than Jacobson's was.[14]

■ The only evidence offered of predisposition independent of Hernandez' inducements was Sandoval's statement that in the past he had paid "under the table ... commissions" in doing business with Mexican companies.[15] The record does not reflect the recipients of or bases for these "commissions." The Supreme Court found as a matter of law that evidence of Jacobson's previous purchases of pornographic material was insufficient to establish predisposition because the previous purchases were legal. The Court concluded that the previous conduct did not demonstrate the likelihood that Jacobson would engage in such conduct after it became criminally proscribed. Similarly, no rational jury could find that Sandoval's statement about "commission" payments to

10. — U.S. at —, 112 S.Ct. at 1543, 118 L.Ed.2d at 187 ("Rational jurors could not say beyond a reasonable doubt that petitioner possessed the requisite predisposition *prior to* the Government's investigation and that it existed *independent of* the Government's many and varied approaches to petitioner.").

11. *United States v. Hudson*, 982 F.2d 160 (5th Cir.), *cert. denied*, — U.S. —, 114 S.Ct. 100, 126 L.Ed.2d 67 (1993) (reaffirming view that enthusiasm for crime can satisfy predisposition requirement); *Arditti*, 955 F.2d at 343 ("Where there is no overwhelming evidence of serious resistance, and the defendant jumped in with both feet, the defendant is an eager, active participant and was therefore not entrapped.").

12. *Jacobson*, — U.S. at —, —, 112 S.Ct. at 1541, 1543, 118 L.Ed.2d at 185, 187 ("[W]here the defendant is simply provided with the opportunity to commit a crime ... the ready commission of the criminal act amply demonstrates the defendant's predisposition.... [Although Jacobson] had *become* predisposed to break the law ... the Government did not prove that this predisposition was independent and not the product of the attention that the Government had directed at petitioner"; after persistent government efforts "to create predisposition," Jacobson's "ready response to these solicitations cannot be enough to establish beyond reasonable doubt that he was predisposed."). *Jacobson* limits but does not overrule *Arditti* because the latter involved a mere offer of opportunity followed by eager participation. In the *Arditti* factual scenario—unlike the instant case—eagerness is a reliable substitute for evidence of predisposition because in such cases the government's persistence did not create the defendant's predisposition.

13. The government distinguishes *Jacobson*, arguing that the government pursued Jacobson for 26 months while Sandoval agreed to bribe Hernandez after only one meeting. The time involved is less important than the degree of pressure applied. Jacobson received seven or eight mailings from the government over the course of 26 months. Compared to the full-court press utilized in the instant case by Agent Hernandez, the government in *Jacobson* acted with comparative restraint.

14. The government refers to Sandoval's failure to withdraw in the last days of the crime as evidence of eager participation. We are not persuaded. This does not provide the required evidence that a disposition existed prior to and independent of the government's inducements.

15. The government argues on appeal that if Sandoval had simply wanted a reward for information, he would not have contacted Agent Hernandez and asked to meet her for lunch outside of the office. Sandoval explained to Hernandez at their lunch meeting that they were both busy, and he wanted to save time by meeting with her during their lunch break. Also Sandoval's earlier meetings had not been held in Hernandez' office. Hernandez met with Sandoval and his wife in Sandoval's home. Considering these background facts, Sandoval's request to meet Hernandez for lunch is less than ominous. The prosecutor did not consider this fact significant enough to argue in closing to the jury that this fact supported Sandoval's predisposition to bribe.

unidentified Mexicans established a disposition to bribe IRS agents.[16]

Given our conclusion that Sandoval was entrapped, we need not reach his remaining contentions.[17] The judgment of the district court is REVERSED and the matter is REMANDED with instructions to dismiss the indictment with prejudice.

---

**16.** As the Supreme Court explained: "[E]vidence that merely indicates a generic inclination to act within a broad range, not all of which is criminal, is of little probative value in establishing predisposition." *Jacobson*, —— U.S. at ——, 112 S.Ct. at 1536–1537, 118 L.Ed.2d at 185.

**17.** It bears mentioning, however, that Sandoval's claim of multiplicity as to the government's prosecution of each $1500 installment payment as a separate crime was meritorious.