**UNITED STATES of America**

v.

**Mohammad AYYUB and Abdul Qayyum Butt, Defendants.**

**No. CR 96–30057–FHF.**

United States District Court,
D. Massachusetts.

March 25, 1998.

Vincent A. Bongiorni, Springfield, MA, for Mohammad Ayyub, defendant.

Anthony C. Bonavita, Bonavita, Gordon, Danie & Walsh, Agawam, MA, for Abdul Qayuum Butt, defendant.

Kevin O'Regan, U.S. Atty.'s Office, Springfield, MA, for U.S.

### ORDER

FREEDMAN, Senior District Judge.

Before the court is the Magistrate Judge's Report and Recommendation regarding the defendant's motion to dismiss. Defendant having withdrawn his objections to the recommendation, it is hereby ordered that the recommendation be adopted and the defendant's motion to dismiss denied.

Counsel are notified to appear before this court on April 9, 1998, at 10:00 AM, for a status conference. If the conference should change into a Rule 11 hearing with the defen-

---

dant's presence required, counsel should notify the clerk as soon as possible so that an interpreter can be obtained.

It is so ordered.

## REPORT AND RECOMMENDATION REGARDING DEFENDANT MOHAMMED AYYUB'S MOTION TO DISMISS

### (Docket No. 68)
### December 17, 1997

NEIMAN, United States Magistrate Judge.

Pursuant to Fed.R.Crim.P. 12, Defendant Mohammed Ayyub ("Ayyub") has moved to dismiss the indictment. Ayyub claims that the indictment was obtained in violation of his right to due process of law as guaranteed by the Fifth and Fourteenth Amendments. Although his motion only seeks to dismiss the indictment (see Docket No. 68), Ayyub's supporting memorandum seeks, in the alternative, the suppression of certain statements made by him. Since Ayyub does not identify the particular statements, however, the court treats the motion solely as one to dismiss.

Ayyub's brother and co-defendant, Abdul Qayyum Butt ("Qayyum"), has joined Ayyub's motion to dismiss but has not specified any particular facts or legal arguments uniquely applicable to him. (See Docket No. 78.) Instead, Qayyum adopts Ayyub's argument wholesale. Qayyum's independent motion to suppress certain of his own statements was previously denied. (See Docket Nos. 73 and 85.)

Ayyub's motion to dismiss has been referred to the court for a report and recommendation pursuant to Rule 3 of the Rules of United States Magistrates in the United States District Court for the District of Massachusetts. See 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, the court recommends that Ayyub's motion to be denied.

## PROCEDURAL BACKGROUND

After a series of extended deadlines. Ayyub's motion to dismiss was filed on May 15, 1997. After hearing Ayyub's motion on June 13, 1997, the court ordered the parties to file supplemental memoranda. In addi-

tion, the court requested that the Government file an affidavit from Special Agent Gary Cote of the immigration and Naturalization Service explaining how the case came to be investigated.

Ayyub's supplemental memorandum was filed on July 8, 1997. (See Docket No. 81.) It consists of a three page transcript of a November 14, 1996 conversation between Qayyum and the Government's cooperating witness. Hanif Butt ("Butt"). The Government then filed its supplemental memorandum on July 28, 1997. Thereafter, despite requesting and being granted additional time to file a further response (see Docket Nos. 86 and 87). Ayyub did not file a supplemental memorandum. Rather, he filed a motion for reconsideration of the court's prior ruling with respect to his request for confidential informant information. (See Docket No. 90.). That motion was denied.

## FACTUAL ALLEGATIONS

The following facts are taken from the affidavit in support of the complaint filed by Special Agent Cote on November 15, 1996. In August of 1996, Butt, the Government's confidential informant, was introduced socially to Qayyum at his place of employment, Pizza Plus, a restaurant on Main Street in Springfield, Massachusetts, owned by Ayyub. It was there that Qayyum learned that he and Butt came from the same region in Pakistan. Qayyum, it is alleged, claimed to be associated with local drug dealers and asked Butt if he was a "Number Two" person, a phrase which evidently refers to a criminal in Pakistan. Qayyum told Butt that his brother, Ayyub, sold drugs in Springfield. Butt told Qayyum that he was in Springfield to sell heroin.

On September 14, 1996, Qayyum took Butt to Ayyub's apartment in Springfield and introduced him to Ayyub. Butt told Ayyub that he had access to ten kilograms of heroin. Ayyub, it is alleged, offered to broker the sale of the heroin to local drug dealers in exchange for a commission. Form mid-September to November 15, 1996, Butt allegedly negotiated with both Ayyub and Qayyum to sell the multiple kilograms of heroin.

On September 30, 1996, Butt met with Qayyum at Butt's hotel room in Springfield. The meeting was recorded by the Government on audio and video tape. According to the Government, Qayyum told Butt that Ayyub had sent Qayyum to pick up the sample. Thereafter, on October 1, 1996, Butt met with Ayyub at Butt's hotel room. During the meeting, which was also recorded on audio and video tape, Butt gave Ayyub a small package containing a one gram sample of heroin. Butt, the Government continues, had several additional meetings and conversations with Ayyub and Qayyum. On November 15, 1996, in a room at the Motel 6 in West Springfield, Butt delivered to Qayyum one kilogram of real heroin and four kilograms of sham heroin. Qayyum was immediately arrested as he left Butt's motel room.

In some contrast, Ayyub asserts in his affidavit that, prior to employing Butt as a confidential informant, the Government was not possessed of any evidence which would tend to establish that Ayyub had a predisposition to commit the crimes alleged. Nor is there any evidence, Ayyub asserts, from which the Government could have reasonably concluded that he had previously engaged in criminal behavior. Before the investigation began, Ayyub belonged to no organized group involved in the sale and distribution of narcotics nor did he have any ties, social or otherwise, to such groups.

Ayyub further asserts that the Government's initial attempts to launch this investigation centered on Butt's effort to purchase narcotics from Qayyum, Ayyub's brother. The Government abandoned this plan and elected to employ a reverse sting against Qayyum, Ayyub continues, only after Butt's attempts to purchase narcotics proved fruitless. This ploy permitted the Government to conceive and control the nature and size of the planned drug activity. Moreover, Butt's insistence upon certain terms took advantage of his earlier acquired knowledge of Ayyub's financial condition in order to overcome his lack of willingness to participate. Finally, Ayyub notes that, although the investigation began in August, it was not until September 17, 1996, that the Government began to monitor some of Butt's meetings with Ayyub and Qayyum.

## DISCUSSION

Ayyub's exposition of the facts can be read, at a minimum, to support a defense of entrapment. Indeed, Ayyub has given the Government notice of his intent to rely on that defense. (*See* Docket No. 69.) To establish entrapment, it must be shown that (1) the government induced the offense and (2) the defendant was not predisposed to commit it. *See United States v. Acosta,* 67 F.3d 334, 337 (1st Cir.1995) (citing *Jacobson v. United States,* 503 U.S. 540, 112 S.Ct. 1535, 118 L.Ed.2d 174 (1992)). Entrapment is essentially a question of fact for the jury to determine. *Id.* at 338. *See also United States v. Pratt,* 913 F.2d 982, 988 (1st Cir.1990) ("The question of whether entrapment occurred is factual in nature, and requires submission to the jury if there is 'some evidence' of it.") (internal citation omitted).

Presently, however, the court is confronted with Ayyub's broader motion. Based on the same set of facts which form the basis of his entrapment defense, Ayyub seeks outright dismissal of the indictment prior to trial, describing the cumulative facts as "outrageous government conduct." "This doctrine," Ayyub argues, "can be viewed as a constitution-based spin-off of the entrapment defense." (Def. Mem. (Docket No. 70) at 3.) "Outrageous misconduct," Ayyub continues, "may also function as a kind of supplement to the entrapment defense, reserved for those cases where law enforcement personnel become so over involved in a felonious adventure that they can fairly be said either to have 'created' the crime or to have 'coerced' the Defendants' participation in it." (Id.)

As the Government acknowledges, neither the Supreme Court nor the First Circuit has foreclosed the possibility that the government's active participation in a criminal venture may be so shocking as to violate a defendant's right to due process, notwithstanding the defendant's predisposition to commit the crime. *See Hampton v. United States,* 425 U.S. 484, 491–95, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976) (Powell, J., concurring); *United States v. Russell,* 411 U.S. 423, 431–

32, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973); *United States v. Santana,* 6 F.3d 1, 4 (1st Cir.1993). *See also United States v. Payner,* 447 U.S. 727, 737 n. 9, 100 S.Ct. 2439, 65 L.Ed.2d 468 (1980) ("the government activity in question [must] violate[ ] some protected right of the defendant"). As Justice Powell noted, however, "[p]olice overinvolvement in a crime would have to reach a demonstrable level of outrageousness before it could bar conviction. This would be especially difficult to show with respect to contraband offenses, which are so difficult to detect in the absence of undercover Government involvement." *Hampton,* 425 U.S. at 495 n. 7.

While recognizing the theoretical validity of the doctrine, the First Circuit has never grounded the dismissal of any indictment on grounds of outrageous government conduct. Rather, it has described the doctrine as "moribund" and noted that, "in practice, courts have rejected its application with almost monotonous regularity." *Santana,* 6 F.3d at 4 ("The banner of outrageous misconduct is often raised by seldom saluted."). *See, e.g., United States v. Matiz,* 14 F.3d 79, 82–83 (1st Cir.1994); *United States v. Barnett,* 989 F.2d 546, 560 (1st Cir.1993); *United States v. Smith,* 940 F.2d 710, 715–16 (1st Cir.1991); *United States v. Marino,* 936 F.2d 23, 27 (1st Cir.1991); *United States v. Panitz,* 907 F.2d 1267, 1272 (1st Cir.1990); *United States v. Porter,* 764 F.2d 1, 8–9 (1st Cir.1985).[1]

Despite its poor track record in this circuit, the claim of outrageous government conduct must still be evaluated on a case-by-case basis. *Santana,* 6 F.3d at 6. Some factors which the court noted could be relevant in this evaluation include

(1) the importance of the investigation, evidenced by the type of criminal activity targeted, (2) whether the criminal enterprise predated the investigation, (3) wheth-

er the investigator directed or controlled the criminal activity, and (4) the investigation's impact on the commission of the crime[ ],

*id.* at 6 n. 9 (citing *United States v. Feinman,* 930 F.2d 495, 498 (6th Cir.1991)), as well as

(1) the government's role in creating the crime, (2) the illegality or immorality of police conduct, (3) the defendant's predisposition to commit the crime, and (4) whether the investigation is aimed at preventing further criminality[ ].

*Id.* (citing *United States v. Gardner,* 658 F.Supp. 1573, 1576–77 (W.D.Pa.1987)).

Ayyub's allegation of outrageous conduct on the part of the government, as set forth in his supporting affidavit, boils down to this: a financially motivated informant was permitted by the government to engage in non-monitored meetings with targets of an investigation who had no prior history of involvement with crimes. Added to this mix, Ayyub asserts, was the complete lack of success by the informant to get Ayyub to procure an illegal buyer. At a minimum, Ayyub asserts, the use of drugs and alcohol, assertedly supplied by informant to overcome Ayyub's initial lack of interest, should mandate an evidentiary hearing to resolve factual disputes set forth in his affidavit.

The Government denies the allegations of misconduct set forth in Ayyub's affidavit, yet declines to counter the allegations at this time "because to do so would set up a factual dispute between the parties which might appear to be best resolved by an evidentiary hearing." (Gov. Mem. (Docket No. 76) at 2 n. 1.) An evidentiary hearing is not necessary, the Government maintains, because Ayyub's affidavit, standing on its own, fails to demonstrate that the Government committed

---

**1.** This is not to say that such a due process claim has not succeeded elsewhere. For example, in one particular case, the Third Circuit found that the government's involvement in criminal activity reached demonstrable levels of outrageousness and reversed the conviction. *See United States v. Twigg,* 588 F.2d 373, 380 (3d Cir.1978). There is some question, however, as to whether *Twigg* remains good law in the Third Circuit. *See United States v. Beverly,* 723 F.2d 11, 12 (3d Cir.

1983); *United States v. Jannotti,* 673 F.2d 578, 610 n. 17 (3d Cir.1982) (en banc). More recently, another district court found that dismissal was warranted pursuant to the court's supervisory power in light of the government's repetitious, flagrant and long standing misconduct in connection with its investigation and prosecution. *United States v. Taylor,* 956 F.Supp. 622 (D.S.C. 1997)

outrageous conduct sufficient to cause the dismissal of the indictment.

The court agrees. As the Government's analysis of the *Santana* factors reveals more completely, Ayyub's motion should be denied. The court need only address here the particular factual claims made by Ayyub.

Ayyub claims that Butt, the confidential informant, was the first to suggest that Ayyub become involved in a drug distribution business. In addition, Ayyub claims, the Government had no evidence that he was engaged in any criminal activity prior to Butt being introduced to him or that he was predisposed to commit crimes. Although the Government disputes that Butt was the first to suggest criminal activity, the First Circuit, faced with just such a claim as Ayyub pursues here, has already rejected the principle that the government must suspect criminal wrongdoing before beginning an undercover investigation:

> In the proceeding below, the district court suggested that due process requires that the government must always harbor a reasonable suspicion of criminal wrongdoing before targeting an individual for testing in the crucible of an undercover investigation. We reject this idea.

*United States v. Gifford,* 17 F.3d 462, 471 n. 13 (1st Cir.1994) (citing *United States v. Espinal,* 757 F.2d 423, 426 (1st Cir.1985)) (finding undercover operation to be lawful vis-a-vis a defendant as to whom the government had no previous suspicion of criminal activity). That Butt may have been financially motivated is of no moment with respect to the instant motion.

Ayyub's assertion that Butt threatened him and used marijuana with him, however, proves more problematic for the Government. Putting aside the allegation of threats, about which Ayyub has failed to provide any specifics, the Government concedes that the use of marijuana by Butt, if true, would mean that its own confidential informant had been violating the law. Nonetheless, the Government asserts, it was Ayyub who offered his own marijuana to Butt and, in any case, Ayyub has failed to link Butt's alleged illegal use of marijuana to the crime with which Ayyub is charged.

Granted, in *United States v. Lard,* 734 F.2d 1290, 1296 (8th Cir.1984), upon which Ayyub relies, the Eighth Circuit found that an agent's somewhat similar conduct, smoking marijuana with the defendant as the crime was being committed over the course of one evening, "approached" outrageous conduct. The facts in the instant case, however, stand in some contrast: it was Ayyub who evidently offered the marijuana to Butt, and the various crimes and subsequent investigation took over two months to conclude. Moreover, insufficient evidence has been offered by Ayyub to suggest that marijuana use overcame his will. In any event, the primary holding in *Lard* was that the defendant had been entrapped. Similarly here, Ayyub's entrapment defense may well be viable. As of now, however, without more, Ayyub's allegations, including Butt's use of marijuana, do not call for the dismissal of the indictment on grounds of outrageous government conduct.

Finally, the court believes that an evidentiary hearing is not needed to resolve the motion. As the First Circuit has explained, the decision to hold an evidentiary hearing is within the sound discretion of the court:

> It is self-evident that "[d]istrict courts are busy places and make work hearings are to be avoided." ... It follows that, like other litigants, a criminal defendant has no absolute or presumptive right to insist that the district court take testimony on every motion. ... The test for granting an evidentiary hearing in a criminal case should be substantive: did the defendant make a sufficient threshold showing that material facts were in doubt or dispute?

*Panitz,* 907 F.2d at 1273–74. *See also United States v. Mavroules,* 813 F.Supp. 115, 121 (D.Mass.1993). Here, Ayyub has failed to make a sufficient threshold showing to warrant an evidentiary hearing. Simply put, the material facts, as developed to date, are not in sufficient doubt or dispute as to necessitate a hearing. *See Panitz,* 907 F.2d at 1273–74. *Cf. United States v. Brimage,* 115 F.3d 73, 78 (1st Cir.) ("The claim that the district court was obligated, on this showing, to hold an evidentiary hearing on the issue of

bad faith [regarding police failure to record a conversation] is without merit. Such decisions are within the discretion of the district court.") (citing *United States v. Calderon*, 77 F.3d 6, 9 (1st Cir.1996), *cert. denied*, — U.S. —, 118 S.Ct. 321, 139 L.Ed.2d 248 (1997)).

In sum, Ayyub's allegations of fact, taken as true, fail to demonstrate that the Government engaged in such outrageous conduct as to have the indictment dismissed at this time. Whatever facts loom on the horizon which go to the very core of Ayyub's claim—whether described as an entrapment defense or as grounds for a due process dismissal—are best left for trial. *See Santana*, 6 F.3d at 6 (finding that "outrageousness, by its nature, requires an *ad hoc* determination," but not suggesting "that the assessment be wholly unguided. The *calculus must be rooted in the record*, and it will often be informed by ... various factors."). Even the determination in *Twigg* that the government engaged in outrageous conduct, (*see* n. 1 *supra*), was based on the trial record. Only then was the district court able to resolve the issue that the defendant was not involved in any criminal activity at the time he was contacted by the informant, that the informant planted the idea of creating a methamphetamine lab, and that the drug enforcement agency itself supplied the material and expertise to synthesize the drugs. *Twigg*, 588 F.2d at 380. *See also United States v. Johnson*, 565 F.2d 179, 181 (1st Cir.1977) (affirming trial court's referral to give a fundamental fairness instruction to the jury, because it was the judge's "province to decide whether defendant's case was such that, if believed, it would fall into the exceptional category").

## CONCLUSION

For the foregoing reasons, the Court recommends that Ayyub's motion to dismiss the indictment, joined by Qayyum, be DENIED.[2]

---

2. The parties are advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within ten (10) days** of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall

preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Secretary of Health & Human Services*, 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete*, 792 F.2d 4, 6 (1st Cir.1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega*, 678 F.2d 376, 378–379 (1st Cir.1982); *Park Motor Mart v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir.1980). *See also Thomas v. Arn*, 474 U.S. 140, 154–55, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). A party may respond to another party's objections within ten (10) days after being served with a copy thereof.