# DECISIONS

## OF THE

## APPEALS COURT

### OF

## MASSACHUSETTS

COMMONWEALTH *vs.* JOSE GRATEREAUX.

No. 98-P-492.

Suffolk. September 21, 1999. - March 20, 2000.

Present: ARMSTRONG, GILLERMAN, & PORADA, JJ.

*Controlled Substances. Entrapment. Practice, Criminal,* Dismissal, Disclosure of identity of informer, Access to informer.

At the trial of an indictment for conspiring to traffic in 200 grams or more of cocaine, in which the defendant introduced evidence sufficient to raise the issue of entrapment, the Commonwealth produced ample evidence for the jury fairly to infer both the defendant's predisposition to commit the crime charged and his intent to participate in the conspiracy. [2-3]

A criminal defendant did not demonstrate that the Commonwealth's arrangement to pay a police informant who produced an arrest was offensive to due process, in circumstances in which the payment was not contingent upon the trial outcome and the Commonwealth did not rely upon any testimony of the informant to make its case [3-5]; nor was the informant's conduct in instigating the drug transaction shown to have been so outrageous as to warrant the dismissal of the charge [5].

A criminal defendant was not entitled to dismissal of the indictment against him for the Commonwealth's failure to produce a police informant for the

trial, where the Commonwealth made a diligent effort to locate the informant and, in accordance with an order by the judge, had disclosed to the defendant all information about the informant's latest whereabouts. [5-6]

INDICTMENT found and returned in the Superior Court Department on May 3, 1995.

Pretrial motions to dismiss were heard by *James D. McDaniel, Jr.,* J., and the case was tried before him.

*Lois J. Martin* for the defendant.

*Karen A. Palumbo,* Assistant District Attorney, for the Commonwealth.

ARMSTRONG, J. The defendant was convicted of conspiring to traffic in 200 grams or more of cocaine. The charge resulted from a "reverse sting" operation wherein State Trooper Grassia posed as a drug seller while a paid informant, Pena, referred potential customers to him. Pena introduced Grassia to the defendant, who had agreed to drum up a third party to make a buy from Grassia. Two days later, police arrested the defendant at the scene of a sale of just under two kilograms of cocaine from Grassia to such a third party. On appeal, the defendant challenges the denials of two pretrial motions to dismiss and of his motion for a required finding of not guilty.

1. The judge properly denied the defendant's motions for a required finding. The defendant's trial testimony — that he took part in the deal only after Pena badgered him repeatedly over a period of several days and suggested that Grassia could get the defendant a much-needed green card if he found a drug buyer — sufficiently raised the issue of entrapment, see *Commonwealth* v. *Tracey,* 416 Mass. 528, 536 (1993); *Commonwealth* v. *Urena,* 42 Mass. App. Ct. 20, 21 (1997), so that the Commonwealth had the burden of proving beyond a reasonable doubt that the defendant was predisposed to commit the crimes charged. See *Commonwealth* v. *Monteagudo,* 427 Mass. 484, 487 (1998). There was ample evidence, however, for the jury fairly to infer both the defendant's predisposition and his intent to participate in the conspiracy. When asked by Trooper Grassia at their first meeting whether he wanted to "do business," the defendant responded that he had $39,000 and wanted to buy three kilograms of cocaine, and he then made two phone calls and told Grassia he would return with the money.

Thereafter, it took the defendant only two days to produce a large volume buyer and consummate the sale. During negotiations, the defendant demonstrated personal knowledge of cocaine prices and sampling techniques. Grassia testified that the defendant stated that brokering drug transactions "was his [the defendant's] business, this is what he did," that he knew many "big" dealers, and that he and Grassia could develop a lucrative long-term business relationship. There was also testimony that it was the defendant, and not the third party buyer, who handed Grassia the money and received the cocaine in exchange.

From this evidence, the jury could reasonably infer the defendant's predisposition, i.e., that he was "ready and willing to commit the crime whenever the opportunity might be afforded." *Commonwealth* v. *Miller*, 361 Mass. 644, 651 (1972), quoting from *United States* v. *Groessel*, 440 F.2d 602, 605 (5th Cir.), cert. denied, 403 U.S. 933 (1971). See *Miller*, *supra* at 652 ("The jury may also properly consider the conduct of the defendant as related to the indictments at issue before the jury, and predisposition may warrantably be found upon this kind of evidence alone, if the evidence is of sufficient significance"). That the defendant intended to conspire in trafficking was also a fair inference. See *Commonwealth* v. *Stoico*, 45 Mass. App. Ct. 559, 562 (1998) (sufficient evidence of conspiracy to distribute based on defendant's familiarity with co-conspirator and packages of marihuana, and defendant's statements suggesting existence of a common plan). See also *Commonwealth* v. *Sendele*, 18 Mass. App. Ct. 755, 758 (1984) ("Possession of a large quantity of an illicit narcotic raises an inference of intent to distribute"). The defendant's insufficiency argument hinges on accepting his testimony that he was harassed into going along with the scheme. The jury, however, were free to reject the defendant's version.[1]

2. The judge correctly denied the defendant's first pretrial motion to dismiss. His argument was that the Commonwealth's fee arrangement with the informant Pena was so outrageous as

---

[1]The factual inconsistency between the defendant's conspiracy conviction and the jury's acquittal of him on the related charge of trafficking has no bearing on evidentiary sufficiency as to the former charge. See *Commonwealth* v. *Robicheau*, 421 Mass. 176, 183-184 (1995); *Commonwealth* v. *Elliffe*, 47 Mass. App. Ct. 580, 584-585 (1999); *Commonwealth* v. *Perez*, 47 Mass. App. Ct. 605, 610-611 (1999).

to offend due process.[2] See *Commonwealth* v. *Shuman*, 391 Mass. 345, 353-355 (1984); *Commonwealth* v. *Monteagudo*, 427 Mass. 484, 485-487 (1998); *Commonwealth* v. *LaBonte*, 25 Mass. App. Ct. 190, 195 (1987); *Commonwealth* v. *Lacend*, 33 Mass. App. Ct. 495, 498 (1992). At the hearing on the motion, the defendant called as his sole witness Trooper Grassia, who testified that the agreement was that Pena would bring Grassia individuals who wanted to either sell drugs or buy drugs, and that if investigation of those individuals led to an arrest, Pena would get paid after the arrest a sum later determined on a case-by-case basis by members of the anti-drug task force (in this case, $6,000). In urging dismissal, the defendant relied primarily on *State* v. *Glosson*, 462 So. 2d 1082, 1085 (Fla. 1985), which held that under Florida's Constitution "a trial court may properly dismiss criminal charges for constitutional due process violations in cases where an informant stands to gain a contingent fee conditioned on cooperation and testimony in the criminal prosecution when that testimony is critical to a successful prosecution." The informant in *Glosson* was to be paid ten percent of civil forfeitures resulting from investigations of the drug activities initiated and participated in by him, so long as he cooperated and testified in the criminal prosecutions of the other participants. The parties stipulated that without the testimony of the informant, the defendant could not successfully be prosecuted. *Id.* at 1083.

*Glosson* has not been widely followed (see *Jacobs* v. *State*, 953 P.2d 527, 531-533 [Alaska Ct. App. 1998], and cases cited), and even in Florida has been narrowly read. See *State* v. *Hunter*, 586 So. 2d 319, 321 (Fla. 1991). In any event, *Glosson* is distinguishable on its facts. First, as the judge in this case found, there was "no [contingent fee] agreement here. He got whatever they threw him." Second, Pena did not testify at trial; he was not present at the sale and was not vital to the prosecution's case. Third, Pena's fee did not depend on a conviction. Thus,

---

[2]According to *Commonwealth* v. *Shuman*, 391 Mass. 345, 353 (1984), "this issue, like entrapment, should have been presented at trial rather than by a pretrial motion to dismiss." The reason appears to be one of judicial economy, i.e., to avoid having to hear the same evidence twice. But see *United States* v. *Santana*, 6 F.3d 1, 3 (1st Cir. 1993) (defendants alleged outrageous government conduct in a pretrial motion to dismiss); *United States* v. *Ayyab*, 998 F. Supp. 81, 82 (D. Mass. 1998) (same). Whether police behavior was so outrageous as to require dismissal of an indictment is not a jury issue. See *Commonwealth* v. *Monteagudo*, 427 Mass. at 486 at n.3.

the incentive of the informant to color or falsify trial testimony, a central concern of the court in *Glosson,* 462 So. 2d at 1085, played no role in the defendant's conviction here.[3] Contrast *Commonwealth* v. *Ciampa,* 406 Mass. 257, 262 n.5 (1989) ("Testimony pursuant to a plea agreement made contingent on obtaining an indictment or a conviction, as a result of the witness's testimony, would presumably present too great an inducement to lie, would not meet the test of fundamental fairness, and would not be admitted"); *Commonwealth* v. *Luna,* 410 Mass. 131, 138-139 (1991) (an informant witness's reward contingent on conviction "would raise special problems").

The defendant attempts to buttress his claim that the Commonwealth's arrangement with Pena was "so outrageous or wicked as to deny him due process," *Commonwealth* v. *La-Bonte,* 25 Mass. App. Ct. at 195, by focusing on Pena's alleged hounding and instigation of the drug transaction. The argument is unavailing for two reasons. First, no evidence of Pena's pressuring was presented at the motion hearing. That evidence came out later at trial, and the judge was not then asked to consider it as a basis for dismissal. Second, even if that evidence as well as that regarding the fee arrangement had been before the judge and credited, the circumstances would not have risen to the high level of outrageousness necessary to support dismissal. See *Commonwealth* v. *Monteagudo,* 427 Mass. at 487, which in turn

---

[3]The handful of other out-of-State precedents cited by the defendant on appeal are either distinguishable, or have been eroded, and warrant no extensive discussion. See *United States* v. *Sandoval,* 20 F.3d 134 (5th Cir. 1994) (issue was sufficiency of evidence of defendant's predisposition, not outrageous government conduct); *State* v. *Williams,* 623 So. 2d 462 (Fla. 1993) (illegal manufacture of crack cocaine by law enforcement officials for use in reverse sting was outrageous government conduct under Florida due process clause); *Taylor* v. *State,* 634 So. 2d 1075 (Fla. 1994) (due process not violated where sting was straightforward, fee was not truly contingent, and informant had reduced incentive and opportunity to entice the defendant); *Nadeau* v. *State,* 683 So. 2d 504 (Fla. Dist. Ct. App. 1995) (Florida due process clause violated where informant had repeated unmonitored contacts with defendant, selected amount of drugs to be sold thereby setting defendant's liability, government fronted defendant drugs to carry out sale, and defendant had no prior criminal history or knowledge of drug trade); *State* v. *Vallejos,* 123 N.M. 739 (1997) (neither Federal nor State due process violated where defendant buyer approached police seller in reverse sting operation). See *Williamson* v. *United States,* 311 F.2d 441 (5th Cir. 1962), overruled by *United States* v. *Cervantes-Pacheco,* 826 F.2d 310, 312-316 (5th Cir.) (en banc) (due process does not require per se exclusion of testimony of contingent fee informants), cert. denied sub nom. *Nelson* v. *United States,* 484 U.S. 1026 (1987).

cites several cases: *Commonwealth* v. *Shuman*, 391 Mass. at 355 (requiring "coercion, violence or brutality" or "persistent exploitation of personal weakness"); *United States* v. *Johnson*, 565 F.2d 179, 182 (1st Cir. 1977), cert. denied, 434 U.S. 1075 (1978) ("demands persisting over a period of months" and "pressure that became occasionally angered and even threatening" not outrageous conduct); *United States* v. *Mosley*, 965 F.2d 906, 910 (10th Cir. 1992) ("the challenged conduct must be shocking, outrageous, and clearly intolerable"; outrageous conduct doctrine not "intended merely as a device to circumvent the predisposition test in the entrapment defense").

3. A second motion to dismiss, based on the Commonwealth's failure to produce the informant Pena for trial, was also properly denied. At the hearing, police testified to multiple unsuccessful efforts to locate Pena, including calling two known telephone numbers, visiting his last known address, visiting an area where he was known to have a relative, and trying to contact his ex-girlfriend through her parole officer. Further, a judge had previously directed the prosecution to provide the defendant's attorney with the informant's last known address, date of birth, and social security number, and there is no complaint by the defendant that this information was unavailable to him. The judge did not err in finding that the Commonwealth met its burden of showing that it could not locate the informant and that its conduct had been diligent. See *Commonwealth* v. *Penta*, 423 Mass. 546, 549 (1996). "Because [the informant] was not in the custody of the Commonwealth, the Commonwealth had no affirmative duty to produce [the informant] for trial. . . . The Commonwealth's obligation was to provide the defendant with [the informant's] last known address and to refrain from obstructing the defendant's access to [the informant]." *Id.* at 548-549. See *Commonwealth* v. *Manrique*, 31 Mass. App. Ct. 597, 599-603 (1991) (prosecution complies with duty by offering to disclose all information as to latest location of informant).

*Judgment affirmed.*