09-5195-cr (L)
United States v. Knight

# United States Court of Appeals
## FOR THE SECOND CIRCUIT

August Term 2011

(Argued: September 27, 2011        Decided: February 1,  2012)
Errata Filed: February 6, 2012

Nos. 09-5195-cr (L), 09-5198-cr (con), 09-5336-cr (con)

_____

UNITED STATES OF AMERICA,
*Appellee,*

-v.-

MELVIN RAY LYTTLE,
*Defendant,*

PAUL E. KNIGHT, VIOLETTE GAIL ELDRIDGE, JOHN L. MONTANA, JR.,
*Defendants-Appellants.*

_____

Before:      WALKER, STRAUB, and LIVINGSTON, *Circuit Judges.*

Appeal from the judgment of the United States District Court for the Western District of New York (Charles J. Siragusa, *Judge*), sentencing defendant-appellant Violette Gail Eldridge to a term of imprisonment of 240 months after her conviction for mail fraud in violation of 18 U.S.C. § 1341, wire fraud in violation of 18 U.S.C. § 1343, conspiracy to commit mail and wire fraud in violation of 18 U.S.C. § 371, money laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(i), and conspiracy to launder money in violation of 18 U.S.C. § 1956(h).  Before Eldridge was indicted, the district court (Michael A. Telesca, *Judge*) issued an order pursuant to 18 U.S.C. § 3292 suspending the running of

the statute of limitations prescribed by 18 U.S.C. § 3282 while the government sought evidence in a foreign country. We hold that sufficient evidence supported the district court's *ex parte* order to suspend the running of the statute of limitations. We affirm.

MARK D. HOSKEN (Jay S. Ovsiovitch, *on the brief*), Federal Public Defender's Office, Western District of New York, Rochester, New York, *for Defendant-Appellant* Paul E. Knight.

MAURICE J. VERRILLO, Law Offices of Maurice J. Verrillo, PC, Rochester, New York, *for Defendant-Appellant* Violette Gail Eldridge.

JON P. GETZ, Muldoon & Getz, Rochester, New York, *for Defendant-Appellant* John L. Montana, Jr.

BRADLEY E. TYLER, Assistant United States Attorney (William J. Hochul, Jr., United States Attorney, *on the brief*), Western District of New York, Rochester, New York, *for Appellee*.

LIVINGSTON, *Circuit Judge*:

This appeal requires us to construe 18 U.S.C. § 3292. In specified circumstances, this provision requires a district court, before which a grand jury is empaneled to investigate an offense, to toll the statute of limitations for that offense while the government pursues evidence located in a foreign country. 18 U.S.C. § 3292.[1]

---

[1] 18 U.S.C. § 3292 provides:
(a)(1) Upon application of the United States, filed before return of an indictment, indicating that evidence of an offense is in a foreign country, the district court before which a grand jury is impaneled to investigate

2

Violette Gail Eldridge ("Eldridge") was convicted of numerous offenses relating to her involvement in a fraudulent "high-yield investment program." Before she was indicted and before the applicable statute of limitations had run, the district court granted a government application to suspend the statute of limitations pursuant to 18 U.S.C. § 3292 while the government sought the assistance of the Hungarian government in recovering records relating to transfers of the scheme's proceeds into Hungarian bank accounts. Eldridge was subsequently indicted after the statute of limitations would normally have run.

---

the offense shall suspend the running of the statute of limitations for the offense if the court finds by a preponderance of the evidence that an official request has been made for such evidence and that it reasonably appears, or reasonably appeared at the time the request was made, that such evidence is, or was, in such foreign country.

(2) The court shall rule upon such application not later than thirty days after the filing of the application.

(b) Except as provided in subsection (c) of this section, a period of suspension under this section shall begin on the date on which the official request is made and end on the date on which the foreign court or authority takes final action on the request.

(c) The total of all periods of suspension under this section with respect to an offense—

(1) shall not exceed three years; and

(2) shall not extend a period within which a criminal case must be initiated for more than six months if all foreign authorities take final action before such period would expire without regard to this section.

(d) As used in this section, the term "official request" means a letter rogatory, a request under a treaty or convention, or any other request for evidence made by a court of the United States or an authority of the United States having criminal law enforcement responsibility, to a court or other authority of a foreign country.

On appeal, Eldridge argues that the indictment should have been dismissed because insufficient evidence supported the district court's order to suspend the running of the statute of limitations. She further argues that the district court should not have suspended the statute of limitations because the government already had sufficient evidence to present an indictment to the grand jury before the statute of limitations ran, and because copies of the foreign bank's records could have been obtained pursuant to a subpoena *duces tecum* served on a source within the United States. Finally, she contends that the district court's use of an *ex parte* proceeding when issuing the § 3292 order was improper and that she was entitled to notice and a hearing before the tolling order issued.[2]

We reject each of these contentions. For the reasons that follow, we hold (1) that the evidence in this case was sufficient to support the district court's order; (2) that § 3292 does not require that the foreign evidence sought be necessary for an indictment, nor that it be obtainable only through an official request to a foreign government; and (3) that district courts may rely on *ex parte* proceedings when deciding to issue § 3292 orders.

---

[2] Eldridge and her codefendants-appellants Paul E. Knight and John L. Montana, Jr., raise additional arguments challenging their convictions and the sentences imposed by the district court. We address those arguments in a separate summary order filed simultaneously with this opinion.

## BACKGROUND

In a sealed indictment returned on August 18, 2005, defendant-appellant Violette Gail Eldridge was charged with one count of conspiracy to commit mail and wire fraud in violation of 18 U.S.C. § 371, five counts of mail fraud in violation of 18 U.S.C. § 1341, three counts of wire fraud in violation of 18 U.S.C. § 1343, one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h), and three counts of money laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(i). All of the charges related to an alleged scheme to defraud investors by offering them the opportunity to invest in a private, secret "high-yield investment program" that did not, in fact, exist.

Eldridge argues, and the government does not contest, that her last alleged act in furtherance of this conspiracy occurred in June 2000. Normally this would mean that the five-year statute of limitations imposed by 18 U.S.C. § 3282 would have expired in June 2005, two months before the grand jury returned its indictment on August 18, 2005.

In this case, however, upon application by the government, the United States District Court for the Western District of New York (Michael A. Telesca, *Judge*) issued a sealed *ex parte* order on September 15, 2004, suspending the statute of limitations while the government sought foreign evidence pursuant to 18 U.S.C. § 3292. Based on the affidavit of a Special Agent of the Federal

5

Bureau of Investigation ("FBI") documenting wire transfers between the United States and Hungary, as well as the grand jury testimony of a victim of the alleged fraudulent scheme, the district court found by a preponderance of the evidence that the fraudulent scheme existed, and that "funds received through the fraudulent scheme were transferred to and through financial institutions located in Hungary." Moreover, the court found that information concerning these transactions constituted evidence of potential federal criminal offenses that was "material to the investigation in determining the identity of the individuals associated with the criminal activity." Finally, after examining a copy of the official request, the court found that on August 26, 2004, relying on its Mutual Legal Assistance Treaty with Hungary, the United States had officially asked Hungary to seek evidence relating to the ownership, control, and use of the relevant Hungarian bank accounts and funds, and to forward any such evidence to the United States. The court accordingly ordered that the statute of limitations be suspended from the date the United States filed its official request with Hungary until the date that Hungary either provided the evidence or notified the United States that no foreign evidence existed. If Hungary did not respond, the suspension order stated that the statute of limitations would automatically begin running again after three years.

On February 16, 2006, after the indictment had been filed, Hungary responded by furnishing documents relating to the accounts and wire transfers and by explaining that other files were missing and appeared to have been destroyed.

Eldridge moved to dismiss the indictment on February 20, 2007, arguing in part that it was barred by the statute of limitations. She claimed that the government had not satisfied the requirements of 18 U.S.C. § 3292, that the Hungarian records were not material, and that she was "entitled to review due to the *ex parte* nature of the Government's actions." The district court (Charles J. Siragusa, *Judge*) denied the motion. *See* Minute Entry, *United States v. Eldridge* (W.D.N.Y. Sept. 12, 2008) (No. 05-06116), ECF No. 261.

After a jury trial, Eldridge was convicted on all counts and sentenced to twenty years' imprisonment.

## DISCUSSION

Although we review the district court's factual findings for clear error, we review its interpretation of § 3292 *de novo*. *See United States v. Aumais*, 656 F.3d 147, 154 (2d Cir. 2011); *John Wiley & Sons, Inc. v. Kirtsaeng*, 654 F.3d 210, 216 (2d Cir. 2011).

We begin with the statute's text. *See Dobrova v. Holder*, 607 F.3d 297, 301 (2d Cir. 2010). Section 3292(a)(1) provides that:

7

> Upon application of the United States, filed before return of an indictment, indicating that evidence of an offense is in a foreign country, the district court before which a grand jury is impaneled to investigate the offense shall suspend the running of the statute of limitations for the offense if the court finds by a preponderance of the evidence that an official request has been made for such evidence and that it reasonably appears, or reasonably appeared at the time the request was made, that such evidence is, or was, in a foreign country.

18 U.S.C. § 3292(a)(1). The statute therefore requires a district court to suspend the running of a statute of limitations upon an appropriate application showing: (1) that evidence of an offense being investigated by a grand jury is in a foreign country; and (2) that such evidence has been officially requested. According to the statute, the preponderance-of-the-evidence standard applies when determining whether the United States has made an official request. When deciding whether the evidence is in a foreign country, however, a lower standard applies: a court must "find[] by a preponderance of the evidence . . . that it *reasonably appears*, or reasonably appeared at the time the request was made, that such evidence is, or was, in a foreign country." *Id.* (emphasis added). In other words, this element is satisfied even if the court itself is not certain that a preponderance of the evidence shows that the evidence is in a foreign country, so long as a reasonable factfinder could have come to that conclusion.

The district court in this case was presented with (1) a copy of the government's official request to Hungary, (2) a transcript of a victim's grand jury

8

testimony explaining how he had been defrauded, and (3) an FBI agent's sworn affidavit tracing transfers of victims' funds from a U.S. bank account to a Hungarian bank account. On this record, we easily conclude that the district court did not clearly err in finding that the United States had officially requested evidence of an offense that reasonably appeared to be located in Hungary. *See United States v. Jenkins*, 633 F.3d 788, 798 (9th Cir. 2011); *United States v. Trainor*, 376 F.3d 1325, 1336 (11th Cir. 2004) ("[T]he Government must present *some* evidence—something of evidentiary value—that it reasonably appears the requested evidence is in a foreign country.").

Eldridge relies on *United States v. Trainor*, 376 F.3d 1325 (11th Cir. 2004), which held that a § 3292 order could not properly issue solely on the basis of "an unsworn application, accompanied by only a copy of an evidentiary request sent to a foreign government." *Id.* at 1327. But *Trainor* emphasized that the only reason the panel there was "faced with a post-indictment reversal [was] the Government's failure to submit *any* evidence to support the § 3292 tolling order." *Id.* at 1335. Both the Eleventh Circuit in *Trainor* and the Ninth Circuit in *United States v. Jenkins*, 633 F.3d 788 (9th Cir. 2011), have said that § 3292 is satisfied so long as the government presents "something with evidentiary value," as opposed to unsupported assertions, "tending to prove it is reasonably likely that evidence of the charged offenses is in a foreign country." *Jenkins*, 633 F.3d

9

at 798 (quoting *Trainor*, 376 F.3d at 1332) (internal quotation marks omitted). Indeed, the *Trainor* court wrote that a sworn declaration from an FBI agent describing the evidence "undoubtedly would have provided a sufficient evidentiary basis for the tolling order." *Trainor*, 376 F.3d at 1335. Here, the district court was presented with just such an affidavit.

Eldridge also argues that the relevant Hungarian bank had offices in the United States, and therefore that the records here could have been obtained by a domestic subpoena *duces tecum*. Even if this were true, nothing in § 3292 suggests that the foreign evidence must be obtainable *only* through diplomatic channels for the statute of limitations to be suspended. Rather, the plain text of § 3292 requires the district court, upon proper application, to suspend the statute of limitations when the government chooses to pursue foreign evidence through an official diplomatic request, regardless whether it might have been able to obtain the foreign evidence by other means.

Eldridge further claims that before the statute of limitations ran, the government had sufficient evidence upon which to present an indictment to the grand jury, even without the benefit of the Hungarian evidence. She argues that, in such circumstances, tolling is inappropriate. The statute's plain text, however, forecloses this argument as well. Section 3292 does not demand that the foreign evidence sought be pivotal to the indictment; rather, it need only be

10

"evidence of an offense." Grand juries are not required to vote on indictments as soon as they have probable cause: "A grand jury investigation 'is not fully carried out until every available clue has been run down and all witnesses examined in every proper way to find if a crime has been committed.'" *Branzburg v. Hayes*, 408 U.S. 665, 701 (1972) (quoting *United States v. Stone*, 429 F.2d 138, 140 (2d Cir. 1970)); *see also United States v. R. Enters., Inc.*, 498 U.S. 292, 297 (1991) (same); *Blair v. United States*, 250 U.S. 273, 282 (1919) (same). Section 3292 does not alter this long-standing precept, but rather facilitates it by providing a means to suspend the statute of limitations while evidence is sought from abroad.

Finally, Eldridge argues that she was entitled to see the *ex parte* papers filed by the government and to a hearing regarding whether there was sufficient factual basis for the § 3292 order. Eldridge, however, does not offer any authority to support this position. "Nowhere in [§ 3292] does it state that the party whose statute of limitation is being suspended is entitled to notice or a hearing." *DeGeorge v. U.S. District Court*, 219 F.3d 930, 937 (9th Cir. 2000). Nor is this surprising, given the "traditionally non-adversarial and secret nature of grand jury investigations." *Id.* We therefore join the other circuits that have considered the question in holding that there is nothing improper about *ex parte* proceedings to determine whether to issue § 3292 orders. *See United States v.*

*Hoffecker*, 530 F.3d 137, 168 (3d Cir. 2008) ("We find that there was nothing improper about the *ex parte* nature of the proceeding before the grand jury judge."); *United States v. Bohn*, 281 F. App'x 430, 434 (6th Cir. 2008) (per curiam); *DeGeorge*, 219 F.3d at 937; *see also United States v. Torres*, 318 F.3d 1058, 1061 (11th Cir. 2003) ("Under § 3292, the government may apply, ex parte, for suspension of the statute of limitations when it seeks evidence located in a foreign country."); *United States v. Wilson*, 249 F.3d 366, 371 (5th Cir. 2001) ("An application to toll the statute of limitations under § 3292 is a preindictment, ex parte proceeding."), *abrogated on other grounds by Whitfield v. United States*, 543 U.S. 209 (2005).

Eldridge also argues that the district court erred in denying her request for a hearing when she moved to dismiss the indictment on statute-of-limitations grounds. We express no opinion on whether a defendant would ever be entitled to a post-indictment hearing attacking an earlier order tolling the statute of limitations under § 3292. No hearing was warranted here, however, because apart from the arguments we have already rejected, Eldridge made no argument to the district court—let alone presented any evidence—that the government failed to meet the standard for tolling described above. *Cf. Wilson*, 249 F.3d at 372–73 (holding that the district court properly granted the government's § 3292 application *ex parte*, but erred in denying the defendant's request for a hearing

12

on a motion to dismiss the indictment when the defendant presented documentary evidence suggesting that the government failed to transmit the request for evidence to the foreign country).

## CONCLUSION

Because the district court's § 3292 order was supported by sufficient evidence; because § 3292 does not require that the foreign evidence sought be necessary for an indictment, nor that it be obtainable only through an official request to a foreign government; and because district courts may rely on *ex parte* proceedings in issuing § 3292 orders, we **AFFIRM**.