COMMONWEALTH *vs.* JAMES R. LABONTE.

No. 87-618.

Middlesex.   November 9, 1987. — December 22, 1987.

Present: GREANEY, C.J., KAPLAN, & GRANT, JJ.

*Controlled Substances. Entrapment. Witness,* Privilege. *Constitutional Law,* Privilege against self-incrimination, Access to witnesses.

At the trial of an indictment charging trafficking in cocaine under G. L. c. 94C, § 32E (*b*) (2), where the defense of entrapment was raised, the evidence was sufficient to demonstrate that the Commonwealth's agents merely provided an opportunity for the already "predisposed" defendant to break the law [194-195], and their methods were not so outrageous as to deny the defendant due process of law [195].

No issue with respect to certain testimony at a criminal trial was preserved for appellate review, where the defendant had elicited the evidence on cross-examination of the witness and had made no objection. [196]

The judge at a criminal trial correctly allowed a witness called by the defendant to claim his privilege against self-incrimination, where the witness's testimony could apparently have exposed him to prosecution, or jeopardized him in connection with a pending indictment. [196-197]

INDICTMENT found and returned in the Superior Court Department on May 15, 1986.

The case was tried before *Robert A. Barton,* J.

*Matthew A. Kamholtz* for the defendant.

*Cheryl Jacques,* Legal Assistant to the District Attorney (*Fredric L. Ellis,* Assistant District Attorney, with her) for the Commonwealth.

KAPLAN, J. There is no dispute that the defendant, LaBonte, committed the acts constituting the crime described at G. L. c. 94C, § 32E(*b*) (2), trafficking in cocaine by distributing or bringing into the Commonwealth a net weight of more than 100 but less than 200 grams of the substance. He sought to be excused because, as he claimed, the Commonwealth failed

to present a case from which a jury could justifiably infer beyond a reasonable doubt that its agents did not "entrap" him into the performance of the criminal acts. The point was raised by the defendant's motion for a required finding of not guilty at the close of the Commonwealth's case, which the judge denied. The defendant subjoins the argument that the judge's instructions about entrapment were defective. He contends, further, that the judge erred in admitting hearsay testimony about an informant's activities and in allowing the informant's claim of a privilege against self-incrimination. We take up these points in turn and shall end by affirming the conviction.

*Question of entrapment.* Reviewing the ruling on the motion for a required finding, we take the evidence with the usual intendment in favor of the Commonwealth, see *Commonwealth v. Campbell,* 394 Mass. 77, 82 (1985), and accordingly the story emerges thus. On March 28, 1986, after arrangement between Douglas Mann and the defendant, Mann and Stephen Matthews met the defendant in front of the Marriott Hotel in Newton. The defendant was unaware that Matthews was a State trooper doing undercover work for a narcotics unit and that Mann was acting as a "confidential informant" for the police.[1] Mann introduced Matthews to the defendant as "Steve O'Brien." A businesslike conversation followed between Matthews and the defendant. Matthews said he was interested in buying five ounces of high quality cocaine weekly, and the defendant replied that he could supply those amounts; the cocaine would be of high quality, but he could not promise "mother of pearl." There was some haggling over price, but it was finally fixed at $1,800 an ounce. Delivery was expected to take place perhaps within a week or ten days. Matthews gave the defendant a number for activating a "beeper" to record a telephone number at which the defendant could be called for the purpose of arranging a "meet."

Concluding their conversation, Matthews and the defendant entered the hotel, had a drink there, and parted.

---

[1] It was stipulated that Mann was an agent of the police in this affair from February 7 to April 4, 1986. See *Commonwealth* v. *Thompson,* 382 Mass. 379, 380 & n.2 (1981).

On April 1, the beeper showed a telephone number, and, after trying a few times and getting a busy signal, Matthews completed the call with a person who said Jim had just left. Matthews secured the defendant's home telephone number from Mann and reached the defendant by phone the following morning, April 2. Time and place of delivery of the cocaine were set at 11:00 A.M., April 4, the Marriott Hotel in Burlington.

Matthews, carrying $9,000, arrived on time on April 4, parked his (unmarked) car in front of the hotel, and entered. The defendant was at a telephone in the lobby. The men met and shook hands and at Matthews' suggestion went out and entered Matthews' car. Matthews drove the car to the back of the hotel and stopped. The defendant drew out a brown bag enclosing a plastic bag which contained a white substance in "rock" form with some fall from the rock. He said it was real good; he had used some from the same "till" the previous night at a Prince concert; it might have a funny odor because of the "cut" (the dilutant that had been applied). Matthews examined the stuff and smelled it. At that point he announced himself and placed the defendant under arrest. The content of the bag later assayed officially as 118.3 grams (in excess of four ounces) of 59% cocaine (with inositol as a dilutant).[2] Its street value (assuming a further cut) would be about $30,000.

The defendant was frisked and then taken to a Burlington police station. After booking and due Miranda warnings, he told Matthews and other officers quite freely that John Smith (pseudonym) of Nashua, New Hampshire, a very big dealer, was his source for the cocaine; Smith had "fronted" the transaction, i.e., given him the cocaine on credit, and would expect to receive $7,000 from him in payment that afternoon. He handed the officers Smith's business card showing that Smith was associated with a local company. In response to questions, the defendant said he would be willing (upon the promise by the police of a recommendation of leniency on the present

---

[2] The defendant testified that he had also received from his source, John Smith (pseudonym), a second packet with a small additional quantity.

cocaine charge) to cooperate with the police in incriminating Smith. That possibility faded when the police were unwilling to set a trap for Smith by certain expedients that were suggested, such as giving the defendant $7,000 in cash to hand to Smith.

The foregoing is the substance of Matthews' testimony on direct examination, to which should be added that Matthews characterized the defendant's behavior as being clear of perturbation or anxiety up to the time of arrest. (Testimony by two other officers is noted in the margin.[3])

In cross-examining Matthews, defendant's counsel attempted to get him to agree with the version of the facts that the defendant put forth in his later testimony on his own behalf. Matthews did not yield to the attempt. Defense counsel did elicit from Matthews that in early February, 1986, he had arrested Mann, who had a sizable criminal record, on a charge of cocaine trafficking. On February 7, the two made a deal: if Mann would cooperate with the police and help to secure the arrest of a substantial drug dealer (one who dealt in multiple ounces), the police would urge the district attorney to ask for leniency on Mann's cocaine trafficking charge. Mann mentioned the defendant LaBonte as a substantial dealer. Matthews instructed Mann to introduce him to the defendant. Mann indicated that he would approach the defendant on the basis of an indebtedness of $900 owed by Mann to the defendant; Mann had given the defendant a check for that amount, but the check had bounced. Presumably Mann would suggest to the defendant that his profits from sales of cocaine to a third party would cover the $900 outstanding. Then followed Mann's introduction of the undercover trooper Matthews to the defendant. The charge against Mann was still pending; the district attorney

---

[3] Also called by the Commonwealth as a witness was Sergeant Mark Delaney of the State police, who was at the scene in Burlington with other officers. He followed Matthews, at some distance, into the Marriott and confirmed Matthews' description of the lobby meeting. Finally, Thomas L. Doud, a special agent of the Federal Drug Enforcement Agency, testified that after he, with others, had the defendant's house in Deerfield, New Hampshire, under surveillance on the morning of April 4, he proceeded on call to the Burlington police station, where he participated in the conversations with the defendant.

was being urged to ask its dismissal. (The cross-examination went into other matters which need not be recounted.)

Upon redirect examination, Matthews brought out the "situation" regarding the $900 debt. According to Mann, this arose from an earlier sale by the defendant to Mann of an ounce of cocaine (priced between $1,800 and $2,000). Matthews also testified that the present was not the only situation in which Mann had assisted the police.

By the established rule, an issue of entrapment is not raised unless it appears that a Commonwealth agent did something more than merely request or solicit the defendant to do the acts that comprised the given crime. See *Commonwealth* v. *Miller,* 361 Mass. 644, 651-652 (1972). We need not inquire whether there was enough in the present case even to produce the issue, for the Commonwealth carried any burden of proof case upon it.

First, on the element of undue enticement, we ask whether the Commonwealth, acting with the aid of an informant, was setting a trap for an "unwary innocent" or for an "unwary criminal." See *Commonwealth* v. *Harvard,* 356 Mass. 452, 459 (1969). Otherwise stated, was the defendant, initially not ready or willing to break the law, enticed or ensnared by the Commonwealth into overcoming his reluctance or resistance and doing so? Or did the Commonwealth merely provide the defendant, already ready and willing — already "predisposed" — to commit the crime, an opportunity to do so? See *Commonwealth* v. *Miller,* 361 Mass. at 651; *Commonwealth* v. *Shuman,* 391 Mass. 345, 351 (1984). The present case was shown to conform to the latter pattern. Mann offered the defendant an opportunity by indicating a chance of profit and plausibly pointing to a buyer. The defendant was quite prepared to seize the opportunity and knew how to do it. He was deep enough in the trade to be able to procure the drug within a week of making the contract; familiar with the argot from "cut" to "fronting" to "mother of pearl"; and so knowledgeable about current prices that he could negotiate with conviction. The facts are no less convincing for the prosecution than those in other cases where predisposition was proved, e.g., *Commonwealth* v. *Harvard,*

356 Mass. at 454-455, 460; *Commonweath* v. *Miller,* 361
Mass. at 647-649, 652-653; *Commonwealth* v. *Shuman,* 391
Mass. at 346-349, 352-353; *United States* v. *Valencia,* 645
F.2d 1158, 1167-1168 (2d Cir. 1980); and they are in sharp
contrast to cases where the prosecution failed in such proof,
e.g., *Sherman* v. *United States,* 356 U.S. 369 (1958).

Disengaged from the first issue is a possible second, did the
Commonwealth establish that, in its effort to catch the defend-
ant, it did not use methods so outrageous or wicked as to deny
him due process? See *Commonwealth* v. *Shuman,* 391 Mass.
at 353. The answer surely is that the Commonwealth sustained
this burden also. Contrast the facts in *United States* v. *Twigg,*
588 F.2d 373 (3d Cir. 1978).[4]

In his brief the defendant overlooks much of the evidence
presented in the case-in-chief and seems to offer the defendant's
later testimony on his own behalf as necessarily true. That
approach will not do on a motion for a required finding. For
completeness, however, we suggest that the defendant's own
story was very feeble. The defendant took care in his testimony
not to put himself in contradition to various basic facts testified
to in the case-in-chief, but to weave around them. He said the
$900 was an unsecured loan to Mann (whom he did not know
well) and was not connected with a drug sale. Yet Mann ap-
proached him to suggest a drug transaction that would liquidate
the debt. He needed the $900 and, when Mann became repetiti-
ously insistent, he grudgingly went forward to the point of
appearing in Newton. The proposed purchaser struck him as
a ruffian or mobster who might do him or his family hurt if
he did not procure the cocaine. Although he said he had no
previous illicit connection, and was not himself a drug user,
he was able in a few days to ascertain that Smith (with whom

---

[4] *Judge's instructions.* The defendant complains about confusion in the
judge's instructions on entrapment (given early in the trial to orient the
jury, and again at the end), but the confusion was rather in the defendant's
objection. The judge followed the language as well as the substance of the
decisions in the Commonwealth above cited. (For other discussions, see
Model Penal Code and Commentaries § 2.13 [1985]; Note, Entrapment,
73 Harv. L. Rev. 1333 [1960].)

Commonwealth *v.* LaBonte.

he had a nodding acquaintance) was a drug dealer, to apply to him, and to get a supply without paying cash.

*Hearsay question.* There is irony in the defendant's claim that the judge committed error in allowing Matthews to testify about communications made to him by Mann: this testimony came in as part of the defendant's own cross-examination of Matthews, and of course the defendant raised no objection. Neither did the defendant object to the substance of Matthews' short testimony on redirect examination.[5] As any supposed hearsay objection is thus lost for purposes of appellate review, we need not consider whether any or all of Mann's communications to Matthews could possibly have been admitted (if offered by either side) by way of "exception" to the hearsay rule, as declarations against penal interest by a person rendered "unavailable" because of his rightful claim of a privilege against self-incrimination. See *Commonwealth* v. *Carr,* 373 Mass. 617, 620-625 (1977); Liacos, Massachusetts Evidence 323-324 (5th ed. 1981).

*Privilege.* Upon voir dire, the jury being excluded, the defendant called Douglas Mann as a witness. Represented by independent counsel, Mann claimed his privilege, which was allowed. The ruling was correct, if there was even slender ground for apprehending that testimony on the part of Mann might tend to incriminate him, see *Powers* v. *Commonwealth,* 387 Mass. 563, 564-565 (1982), and here the ground was solid. When the judge ruled, he knew the circumstances of the case. Mann could not justifiably fear prosecution for his involvement in the sale transaction between the defendant and Matthews, because Mann was here acting with the assent and encouragement of the police. See *Commonwealth* v. *Baker,* 155 Mass. 287, 291 (1892). But he was still under prosecution

---

[5] The defendant objected only to the use of the word "situation" (presumably on the grounds of indefiniteness) when referring to the transaction resulting in the $900 debt.

Even if the objection had been taken to the substance of Matthews' testimony on redirect, and that substance was considered hearsay, it would come in as simply rounding out or completing what the defendant had elicited on cross. Cf. *Commonwealth* v. *Watson,* 377 Mass. 814, 826-831 (1979).

for the separate cocaine trafficking in February, 1986, on which the police had merely promised their efforts toward leniency; and, as far as appears, he was exposed to prosecution on his purchase of cocaine from the defendant which gave rise to the indebtedness of $900. We observe that the defendant's objection to Mann's claim of privilege was in blanket form; he made no attempt to mark out areas, if conceivably there were any, in which Mann might testify without fear of self incrimination. See *Commonwealth* v. *Baker,* 348 Mass. 60, 63-64 (1964); *Commonwealth* v. *Douglas,* 354 Mass. 212, 224-225 (1968). This was not a case of the government withholding from a defendant the identity of an informant, see *Roviaro* v. *United States,* 353 U.S. 53 (1957). Indeed, the judge reminded defense counsel of his right of access to Mann to attempt an interview, citing *Commonwealth* v. *St. Pierre,* 377 Mass. 650 (1979); see at 657-661. However, there is no indication that counsel expressed any wish to approach Mann.[6] The defendant does not assert that he has a right to compel the Commonwealth to seek a grant of immunity for Mann. As to any argument of unfairness to the defendant in Mann's claim of privilege, such a claim, when otherwise valid, may not be refused because the unavailability of the witness may fall upon parties with unequal weight. Here, however, the judge pointed out that if Mann's nonappearance before the jury might hurt the defendant, so might it hurt the Commonwealth; and trial counsel said he supposed that was so. We add that the judge was right to admonish both sides not to make reference to Mann's nonappearance. See *Commonwealth* v. *Hesketh,* 386 Mass. 153, 157 (1982).

*Judgment affirmed.*

---

[6] Contrast *United States* v. *Catanzaro,* 407 F.2d 998 (3d Cir. 1969), a case where the defendant claimed to have been entrapped into selling material which he did not know to be illicit drugs. The government, although evidently able to offer its informant as a witness in its direct case — it did not appear that he would have claimed a privilege — in fact put in what the appellate court regarded as hearsay testimony of declarations by the informant, which was crucial to the question of the defendant's predisposition. The defendant improvidently, but in the circumstances perhaps understandably, did not object to the hearsay. The court reversed the conviction for a new trial, admonishing the prosecution to make the informant available as a witness on the retrial.